## PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW

### Conclusions of Law -- Motion for Class Certification

1. Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following prerequisites to class certification: One or more members of a class may sue or be sued as a representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly an adequately protect the interests of the class. These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d.Cir. 2000).

2. To certify a class, Plaintiffs must satisfy the four prerequisites of Fed. R.Civ.P. Rule 23(a), as well as one of the three prerequisites of Rule 23(b), by a preponderance of the evidence. *Teamsters Local 445 Freight Div. pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

3. Rule 23(a)(1): Numerosity: As this Court recognized in *Perkins v. Southern New England Telephone Co.*, 669 F.Supp. 2d 212, 223 (D.Conn. 2009)(*citing Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994)), "[t]he standard for numerosity under Rule 23(a) is not tied to a minimum number, but rather inquires whether the class is so numerous that joinder of all members is impracticable." In *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), the Second Circuit stated that "numerosity is presumed at a level of 40 members." Moreover, the Second Circuit has explained, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v.*



*Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Defendants have stipulated that each plaintiff class is so numerous that joinder is impracticable.

4. Rule 23(a)(2): Commonality: The commonality requirement is met if the plaintiffs' claims share even one common question of law or fact with potential class members. *Wal-Mart, Inc. Stores, Inc.v. Dukes*, 131 S.Ct. 2541, 2556 (2011). A common question of law or fact is described as "a common contention . . [that] must be of such a nature that it is capable of classwide resolution...." *Id.* at 2551. These common questions exist "at the core of the cause of action alleged." *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 91 (D.Conn. 2001).

5. There are central contentions of both law and fact which go directly to the "core" of plaintiffs' claims and which are capable of class-wide resolution. Specifically: 1) whether the defendant Commissioner has policies or practices of failing or refusing to process applications for Medicaid, and provide benefits to eligible recipients, in a legally timely manner; and (2) whether the defendant Commissioner has failed to provide any written guidance to DSS workers regarding (a) the timeline for processing medical bills submitted by individuals to satisfy spend-down amounts and thus be activated for Medicaid benefits and (b) the timeline for issuance of a Form 1348 verification notice.

6. Classes are appropriately defined as including individuals whose applications not only have been delayed beyond the federal standards of promptness but also will be so delayed in the future. It cannot be known in advance which few of these individuals might have circumstances which might in the future legitimately be considered "unusual" and thus exempt defendant from the 45/90 day deadlines. In addition, defendant currently has no reliable system for determining whether <u>any</u> of the individuals whose applications are pending in excess of the federal deadlines

legitimately may be considered as involving unusual circumstances and does not propose one. All such individuals should be included in the class definition.

7. Rule 23(a)(3) Typicality: Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of the claims of the class. The purpose of this requirement is to assure that the named plaintiffs, in pursuing their own interests, will simultaneously be advancing the interests of the class. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Typicality " 'is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.' " *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

8. As of the date of the filing of the complaint, named plaintiff Paul Shafer, like all members of the proposed Applicant subclass, was an applicant for Medicaid whose application for, and receipt of, Medicaid benefits had been unlawfully delayed beyond the statutorily-mandated time frames.

9. As of the date of the filing of the complaint, named plaintiff Joshua Harder, like all members of the spend-down subclass, had submitted medical expenses to satisfy a Medicaid spend-down requirement for the six month period ending December 31, 2012, and had not had those expenses reviewed so as to be activated for Medicaid during the relevant six month time period. Plaintiff Harder is a member of the plaintiff class because he is and was eligible for Medicaid on the basis of spending down medical bills and his medical bills submitted in October 2011 for purposes of qualifying for Medicaid through the spend-down process were not timely acted upon by defendant.

10. For each of the respective classes, the claims of Plaintiffs Shafer and Harder are typical of the claims of the class.

11. <u>Rule 23(a)(4) Adequacy of Representation:</u> The requirement of fair and adequate representation requires a two-fold showing that the plaintiffs' attorneys are competent to conduct the litigation and that the plaintiffs do not have interests adverse to those of the class. *See National Ass'n of Reg'l Med. Programs v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 954 (1977); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968); *see also Moore's Federal Practice* ¶ 23.07[1] (2d ed. 1993). Defendant does not contest the adequacy of plaintiffs' representation.

12. <u>Plaintiffs Meet the Requirements of Rule 23(b)(2):</u> Rule 23(b)(2) permits a suit to be maintained as a class action when the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Defendant has acted on grounds generally applicable to each member of the proposed class and subclasses, in violation of federal statutes and regulations. Defendant is required by federal law, 42 U.S.C. Sec. 1396a(a)(8), to process applications for Medicaid, and medical bills submitted to satisfy Medicaid spend-down amounts, in a "reasonably prompt" manner.

**Conclusions of Law – Applicant Class**

1. Under federal Medicaid law, states are required to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

2. Regulations implementing 42 U.S.C. Sec. 1396a(a)(8) require that Medicaid applications must be processed, and eligibility determined, within 45 days, 42 C.F.R. § 435.911(a)(2), with the exception of applications based on disability which must be processed in 90 days, 42 C.F.R.


§ 435.911(a)(1).

3. The federal Medicaid regulations provide exceptions to these strict, mandatory, time frames for "unusual circumstances." *See* 42 C.F.R. § 435.911(c).

4. 42 C.F.R. § 435.911 is a fully valid regulation for all aspects of the Medicaid program, including long-term care, and it is fully enforceable as providing appropriate regulatory detail to 42 U.S.C. § 1396a(a)(8). *Cf. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. August 13, 2012) (rejecting state defendant's assertion that 42 C.F.R. § 431.244(f), which provides that state Medicaid agency must make final administrative decisions based on fair hearing requests "[o]rdinarily, within 90 days," was not enforceable as it went beyond 42 U.S.C. § 1396a(a)(3)).

5. The federal Medicaid agency, the Centers for Medicare and Medicaid Services ("CMS"), has determined over several years that changes in the Medicaid statutory eligibility requirements do not warrant changes in the processing deadlines set forth in 42 C.F.R. § 435.911(a).

6. Connecticut is not required to participate in the Medicaid program; however, because it chooses to do so, it must comply with all requirements imposed by both the statute and regulations. *See Rabin v. Wilson-Coker*, 362 F.3d 190, 192 (2d Cir. 2004). *See also Reynolds*, 35 F.Supp. 2d at 334 ("A State that chooses to participate in the Medicaid program must implement a plan that complies with all applicable federal statutes and regulations.").

7. In particular, once a state chooses to participate in the Medicaid program, it must timely process all Medicaid applications. *See Alexander v. Hill*, 549 F.Supp. 1355, 1359 (W.D.N.C. 1982), *aff'd* 707 F.2d 780 (4th Cir. 1983); *see also Salazar v. District of Columbia*, 954 F.Supp. 278, 324-26 (D.C. D.C. 1996) ("[i]mpracticability of perfect compliance with Medicaid timeliness regulations does not preclude an injunction requiring compliance with such regulations, when a 'pattern of non-compliance has been shown to have existed.'"). *See also*

5

*Briggs v Bremby,* 2012 WL 6026167 (D. Conn. Dec. 4, 2012) (slip opinion at 17) (rejecting substantial compliance as the standard for enforcing the Food Stamp Act against the same defendant); *Withrow v. Concannon,* 942 F.2d 1385,1387-88 (9th Cir. 1991).

8. Compliance with specific statutes and regulations under the Medicaid Act may not be excused, avoided or ignored because the state declines to appropriate the necessary funds. As long as a state participates in Medicaid and accepts federal funds, it must follow the federal statutes. *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388 (5th Cir. 1980); *Alabama Nursing Home Ass'n v. Califano,* 433 F.Supp. 1325, 1330 (D. Ala. 1977); *Country Club Home, Inc. v. Harder,* 620 P.2d 1140 (Kan. 1980)(finding that there is no provision, express or implied, in the Social Security Act permitting a state to alter federal standards to suit the state's budgetary needs). *Cf. Detainees of Brooklyn House of Detention for Men v. Malcolm,* 520 F.2d 392, 399 (2d Cir. 1975) (holding that inadequate resources of finances can never be an excuse for depriving of constitutional rights and rejecting the defendant's argument that on balance the prison conditions complained of were not so constitutionally offensive as to compel it to build additional facilities to house prisoners, given its limited jail facilities and financial resources).

9. Some Medicaid statutory provisions give states flexibility in making choices in their individual Medicaid state plans, pursuant to which states may factor in budgetary considerations, such as whether to cover optional categories of health services. *See, e.g.,* 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a). Others do not. The Medicaid Act does not authorize flexibility in the part of the statute governing application processing deadlines, 42 U.S.C. § 1396a(a)(8), or the regulations under it. The language of 42 C.F.R. § 435.911 is mandatory. It states that the agency's time standards for determining eligibility <u>may not exceed:</u> (1) ninety days for applicants who apply for Medicaid on the basis of disability; and (2) forty-five days for all other

6

applicants. A state is not authorized to disregard or evade these Medicaid deadlines over budgetary or resource considerations.

10. Under any data set produced by the defendant, for any part of the Medicaid program and for any office of the defendant agency processing Medicaid applications, it is not in compliance as of today with 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.911.

11. The defendant Commissioner's failure to process all Medicaid applications, and provide Medicaid benefits to all individuals and families determined to be eligible for such benefits, within the timeframes required by the federal Medicaid Act and its implementing regulations violates rights secured to the plaintiffs and members of the plaintiff applicant class by 42 U.S.C. § 1396a(a)(8).

12. The defendant Commissioner's violation of 42 U.S.C. § 1396a(a)(8) is enforceable by plaintiffs and members of the plaintiff applicant class under 42 U.S.C. § 1983. *Rabin v. Wilson-Coker*, 266 F.Supp. 2d 332 (D. Conn. 2003) (Chatigny, J.), *rev'd on other grounds*, 362 F.3d 190 (2d Cir. 2004). *See* also *Doe v. Kidd*, 501 F.3d 348, 356-57 (4th Cir. 2007), *cert. denied* 552 U.S. 1243 (2008); *Sabree v. Richman*, 367 F.3d 180, 189-90 (3d Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88-89 (1st Cir. 2002); *Romano v. Greenstein*, No. 12-469, 2012 WL 1745526 (E.D. La. May 16, 2012); *Ability Center of Greater Toledo v. Lumpkin*, 808 F.Supp.2d 1003, 1020-21 (N.D. Ohio, 2011); *Women's Hospital Foundation v. Townsend*, 2008 WL 2743284 at *10 (M.D. La. July 10, 2008); *Susan J. v. Riley*, 254 F.R.D. 459, 453-55 (M.D. Ala. 2008); *Bertrand v. Maram*, 2006 WL 2735494 at *4-5 (N.D. Ill. September 25, 2006); *Westside Mothers v Olszewski*, 368 F.Supp. 2d 740, 757-761(E.D. Mich. 2005) *modified on appeal*, 454 F.3d 532, 540 (6th Cir. 2006); *M.K.B. v. Eggleston*, 445 F.Supp.2d 400, 429 (S.D.N.Y. 2006); *Oklahoma Chapter of the American Academy of Pediatrics (OKAAP) v. Fogerty*, 366 F.Supp. 1050, 1108-

09 (N.D. Okla. 2005); *Mundell v.Board of County Commissioners,* 2005 WL 2124842 at *3 (D. Colo. Sept. 2, 2005); *Reynolds v Giuliani,* 2005 WL 342106 at *15-17 (S.D.N.Y. Dec. 14, 2005); *Michelle P. v. Holsinger,* 356 F. Supp.2d 763, 767 (E.D. Ky. 2005); *Mendez v. Brown,* 311 F. Supp. 2d 134, 137-38, 140 (D. Mass. 2004); *Clark v. Richman,* 339 F. Supp. 2d 631, 638, 640-42 (M.D. Pa. 2004).

The "Unusual Circumstances" Defense and the *Alvarez* Stipulations

13. The *Alvarez* stipulations from 1990 to 1992 are binding on the defendant as they concern plaintiff *Alvarez* but not as they concern other individuals because the case was not certified as a class action. From 1992 until very recently, the defendant believed that the stipulations were binding upon it with respect to all Medicaid applicants.

14. Defendant's actual procedures for application processing and verification have never been sufficient to trigger the "unusual circumstances" exception under 42 C.F.R. § 435.911(c). The Department has not required its workers to issue requests for verification in any particular time period, as is required by the *Alvarez* stipulations which for 20 years required that such requests be issued within seven days of the date of the application. It only recently adopted a requirement effective April 1, 2013 of 20 days, but not as an affirmative requirement and only as a condition for coding a case as involving an "excused" delay.

15. Under the same announcement, the Department will now be allowing itself 15 days to review and process any new information submitted by applicants for Medicaid, versus the 7 days provided in the *Alvarez* stipulations.

16. Allowing the Department 20 days to issue a request for documentation or verification following the date of application, even if it in fact did mandate this from its eligibility workers, would not be consistent with the purposes behind the unusual circumstances provision in federal law, 42 C.F.R. § 431.911(c).

17. A requirement that all such requests for documentation or verification be issued within 7 days of the dates of application would be consistent with the purposes of 42 C.F.R. § 431.911, as such has been adopted by the defendant in the *Alvarez* stipulations and even shorter periods have been adopted in other states. *See, e.g.*, District of Columbia ESA, Part III, Chapter 2, available at http://dhs.dc.gov/node/119412 ("A verification checklist issued through ACEDS must be given to the applicant **at the time the application is filed**"; "If an applicant fails to provide the necessary verification by the tenth day following the application filing date, ACEDS generates a Ten-Day Notice, Form 804 (Application Reminder) on the tenth day or the next available work day ... list[ing] all of the information outstanding on the checklist which was issued at the time the application was filed"). *See also* Maine Department of Health and Human Services, Office for Family Independence, 10-144 Chapter 332, MAINECARE Eligibility Manual, Section 12.3.1.I.B., available at http://www.maine.gov/sos/cec/rules/10/144/ch332/144c332-sans-extras.doc (temporary Medicaid must be provided where "it is necessary to obtain medical reports from physicians, hospitals, or other medical sources and such medical information is not requested from all necessary sources within **five days** after the date of application").

18. Allowing the department 15 days from the date it receives requested verification to process that information is not consistent with the purposes behind the unusual circumstances provision in federal law, 42 C.F.R. § 431.911(c). A requirement that all such information be

processed within 7 days of the date of receipt would be consistent with the purposes of this provision, as it was adopted by the defendant in the *Alvarez* stipulations.

19. The burden is on the defendant to establish that any particular case pending beyond the applicable standard of promptness under federal law involves "unusual circumstances" under 42 C.F.R. § 435.911(c).

20. This Court must not permit unfair and inaccurate attributions by Defendant of delayed applications as "excused" to count as "unusual circumstances" under the meaning of 42 C.F.R. § 435.911(c).

## Conclusions of Law - Spend Down Class

1. The "reasonable promptness" requirement set forth in 42 U.S.C. § 1396a(a)(8) applies to processing the medical bills of individuals who have submitted bills in an attempt to satisfy their Medicaid spend-down amounts, since the regulations implementing this statutory requirement provide that Medicaid must be furnished "without any delay caused by the agency's administrative procedures," 42 C.F.R. § 435.930(a).

2. The requirement of reasonable promptness in 42 U.S.C. § 1396a(a)(8) is not so vague or amorphous as to be unenforceable by the courts as applied to this situation, meeting the enforceability test of *Blessing v. Freestone*, 520 U.S. 329 (1997).

3. While the federal regulations do not provide a specific timeframe for reviewing and acting on medical expenses submitted by the Spend-Down class, the courts are ideally suited for imposing specific deadlines for "reasonable promptness" where Medicaid agencies fail to adopt their own standards for acting on such requests. *See Ladd v. Thomas*, 14 F. Supp. 2d 222, 225 (D. Conn. 1998); *Cornelius v. Minter*, 395 F. Supp. 616, 621 (D. Mass 1974), and in fact often do so, *see, e.g., Ladd*, 14 F. Supp. 2d at 225 (imposing 20 working day deadline for acting on

requests for prior authorization for items of durable medical equipment under Medicaid); *Kessler v. Blum*, 591 F. Supp. 1013, 1031-32 (S.D.N.Y. 1984)(imposing 21-day limit for acting on prior authorization requests).

4. It is appropriate for the courts to look to other states' policies as references in determining what is a reasonable period of time within which a state's Medicaid program must act on bills submitted for spend-down purposes, as well as within which any requests for verification of eligibility for Medicaid must be issued.

5. Those states which have promulgated rules governing the timeliness of processing medical bills for Medicaid spend-down purposes, in the absence of which no Medicaid benefits at all are available, have required quick turnarounds. *See, e.g.*, Ohio Medicaid Manual, 5101:1-39-10, Medicaid: Eligibility Through the Spenddown Process, MEPL 17, Subsection (H)(7)(c) **(two business days)**;[1] Missouri Medicaid Manual, 0810.010.15.10, Authorizing Spenddown Coverage Based On Incurred Expenses.("Coverage must be entered no later than **two working days** after the worker receives verification of expenses that meet spend-down.").[2]

6. Fifteen days is not a reasonable time limit for the defendant to act on medical bills submitted in an attempt to establish eligibility for Medicaid on the basis of spend-down. Five days is a reasonable such period, as reflected in the defendant's reported 97% compliance rate for this processing time under its contract with Xerox, with respect to medical bills largely processed through that contactor.

7. The defendant Commissioner's failure to establish and comply with a reasonable time

---

[1] This manual is available at:
*http://emanuals.odjfs.state.oh.us/emanuals/GetDocument.do?docLoc=C%3A%2Fodjfs%2FReady4Build%2F99_MEM.htm%3ASRC%23%2F1%2F2%2F2%2F1%2F8%2F16%2F1&locSource=input&docId=Document%28storage%3DREPOSITORY%2CdocID%3D%23node-id%282222266%29%29&titleIndx=15&version=8.0.0*

[2] This manual is available at *http://www.dss.mo.gov/fsd/iman/medasst/0810-010-15-10.html*

frame for acting on all Medicaid bills submitted for spend-down purposes and for providing Medicaid benefits to spend down recipients who demonstrate satisfaction of their spend down obligation violates rights secured to plaintiffs and members of the spend down class by 42 U.S.C. §. 1396a(a)(8).

8. As stated above, this requirement is enforceable by plaintiffs and members of the spend-down class under 42 U.S.C. § 1983.

**Conclusion of Law -- Non-Delegability of Medicaid Eligibility Determinations**

1. The Department may not delegate the determination of Medicaid eligibility to private parties. 42 U.S.C. § 1396a(a)(5); *see* Conn. Gen. Stat. §17b-261b(a).

**Conclusions of Law -- Substantial Compliance Is Not the Standard for Determining Defendant's Liability**

1. "Substantial compliance" is not the standard for determining the defendant Commissioner's liability for the violation of federal Medicaid law. 42 U.S.C. § 1396c, the Act's defunding provision, cannot be equated to the threshold of liability under a §1983 action. Such equation would rely on a sole, empty assertion: because the Act has a general defunding provision that rests on "substantial compliance," federal courts must also use that same standard for liability on violations of individual rights.

2. The rhetorical question: "If Congress is satisfied to spend its money to support a program that complies 'substantially' with its expectations, why do we demand more?" *Withrow v. Concannon*, 942 F.2d 1385, 1390 (9th Cir. 1991) (Trott, J., dissenting)). has been answered loudly and clearly by many other circuits, including the Second Circuit: where the statute guarantees a right, "almost" is not good enough. In *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 512 (2d Cir. 2006), the court flatly rejected the "substantial compliance" argument with respect to the IDEA, which also had a substantial compliance provision in its

funding section, 20 U.S.C. § 1416(e)(3). The court stated that "substantial compliance is not the appropriate yardstick by which to measure the extent of Defendants' obligation to Plaintiffs" under the statute, and, as such, "substantial compliance can serve as no defense here." *Id.* The court explained that the substantial compliance standard used for a funding benchmark is not relevant to determining whether rights guaranteed in statutory provisions were violated with respect to individuals.

3. *Shands v. Tull*, 602 F.2d 1156 (3d Cir. 1979), a 34-year-old precedent from the Third Circuit, suggesting that substantial compliance is the standard for liability, has been rejected by every other Court of Appeals. In *Shands,* the Third Circuit reversed the trial court's holding that the federal regulation requiring that the Department of Health, Education and Welfare complete administrative appeals within 90 days is subject to a total compliance standard. The Third Circuit relied on the statutory provision's funding standard of substantial compliance, and ruled that 96% compliance (representing only a dozen total delayed cases[3], and a drastic improvement from the previous 83% compliance rate) was sufficient to meet that standard, and therefore not a violation of the regulation. *Id.* at 1158.

4. *Shands* represented the first Court of Appeals to consider this issue, and, since then, every other circuit confronted with the same has rejected its holding. *See Withrow v. Concannon*, 942 U.S. 1385, 1387 (9th Cir. 1991) (describing defunding as a "virtual death sentence for the state's program" whose standard "is not intended to be the measure of what regulations require"); *Robertson v. Jackson*, 972 F.2d 529, 535 (4th Cir. 1991); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986); *Peppers v. McKenna*, 611 F.2d 373 (6th Cir. 1979) (affirming lower court's rejection of the state's motion for summary judgment on the basis of "substantial

---

[3] In five of those 12 cases, the state continued paying benefits to claimants. *Shands*, 602 F.2d at 1158.

13

compliance" and the state's argument that it lacked funding to comply with federal law, and requiring "full compliance"); *Fortin v. Comm'r of Massachusetts Dept. of Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982) (noting that because the statutes required strict compliance, the state's efforts to improve compliance "are simply what the law demands and what the Department has agreed to do.").

5. Furthermore, the Supreme Court has suggested that the substantial compliance standard for federal regulatory review of state benefits programs is not meant to be applied to the individual rights context. In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Court noted that the substantial compliance provision in Title IV-D of the Social Security Act is "not intended to benefit individual[s]," and noted that the Court "does not foreclose the possibility that some provisions of Title IV-D give rise to individual rights." *Id.* at 343, 345. Thus, post-*Shands*, the Supreme Court has rejected the assumption that the standards for federal regulation of state programs are the same as the standards for §1983 actions to enforce individual rights. Taken together with the other Circuits' express rejection of *Shands*, this means that the Defendant cannot prevail on any allegations of "substantial compliance." Under the prevailing precedent, the Defendant must fully comply with the Medicaid Act's requirement to furnish assistance to individuals with reasonable promptness. 42 U.S.C. § 1396a(a)(8).

6. The scope of relief is not relevant to this trial in that the issue for adjudication is liability only; the scope of the injunction will be set by the Court in a later proceeding or through settlement.

**Conclusions of Law- Voluntary Remedial Amelioration or Progress by Defendant Cannot Circumvent Liability**

14

1. Any evidence of the Defendant's voluntary remedial amelioration regarding violation of §1396a(a)(8)'s reasonable promptness requirement, such as by temporarily processing medical bills submitted for spend-down purposes through the XEROX project, has no bearing on the Court's ability to find liability and to order relief. *Friends of the Earth Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (finding that voluntary cessation does not free the defendant from liability); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("[V]oluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice"); *Tsombanidis v. W. Haven Fire Dept.*, 352 F.3d 565, 574 (2d Cir. 2003) (finding that voluntary cessation does not vitiate against the plaintiff because defendant cannot ensure that unlawful activity "do[es] not temporarily cease only to resume after the claims have been dismissed").

2. Any evidence of voluntary remedial amelioration is particularly unavailing where, as here, the defendant has explicitly stated that the reported high level of compliance regarding medical bill processing for spend-down purposes cannot be expected to continue due to "resource limitations." (See Defendant's Proposed Conclusion of Law #28)

3. A substantial improvement in processing medical bills submitted for spend-down purposes, when largely processed by a private party under contract with the defendant, cannot excuse continuing non-compliance by the defendant with regard to the large number of spend-down cases for which bills are not processed through the state's contractor.

4. Demonstrable progress under voluntary amelioration is also irrelevant to the Court's ability to find liability and to offer relief. Relying on the defendant's evidence of self-initiated improvement would mean "courts would be compelled to leave the defendant free to return to its old ways," which is unacceptable as a matter of law. *City of Mesquite*, 455 U.S. at 289, n.10. *See*

15

*M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 438 (S.D.N.Y. 2006) (defendants' "extensive and commendable ameliorative measures" does not bear on liability). *Cf. Briggs v. Bremby*, 3:12CV324 VLB, 2012 WL 6026167 at *19 (D. Conn. Dec. 4, 2012) (rejecting Defendant Commissioner's argument that delays in the processing of SNAP applications would soon be addressed and finding probability of success on plaintiffs' delayed processing claims).

### Conclusions of Law- Irreparable Harm

1. Plaintiffs are being irreparably harmed by the defendant's delays in processing Medicaid applications submitted by eligible individuals beyond the federal deadlines, warranting preliminary injunctive relief. *See M.K.B. v. Eggleston*, 445 F.Supp. 2d 400, 437 (S.D.N.Y. 2006)(holding, in case challenging wrongful denial of Medicaid and Food Stamp benefits to battered immigrant spouses and their children, that, "[g]iven the often perilous economic circumstances of the plaintiffs in this case, and those similarly situated, the denial of public benefits to such individuals unquestionably constitutes irreparable harm"). *See also Goldberg v. Kelly*, 397 U.S. 254, 264 (1970); *Martin v. Weiner*, 2006 WL 435477 (W.D.N.Y. 2006); *Reynolds v. Guiliani*, 35 F.Supp.2d 331, 339 (S.D.N.Y. 1999) (*quoting Morel v. Giuliani, 927 F. Supp. 622, 635 (S.D.N.Y. 1995)* ("To indigent persons, the loss of even a portion of subsistence benefits constitutes irreparable injury."); *Becker v. Toia*, 439 F. Supp. 324, 336 (S.D.N.Y. 1977)(granting temporary restraining order and then a preliminary inunction against the requirement that recipients of Medicaid in New York make 50-cent co-payments for prescriptions and other medical supplies because even this small expense could result in Medicaid recipients being deprived of necessary medical care); *Class v. Norton*, 376 F.Supp. 496, 502 (D.Conn.1974), *aff'd in part and rev'd in part*, 505 F.2d 123 (2d Cir. 1974)(ordering

16

that interim benefits must be granted to applicants of public assistance whose applications were pending beyond the statutorily mandated time frame).

2. Defendant concedes that, under the case law authority, irreparable harm exists for class members whose applications have been delayed, except for those who are institutionalized and awaiting long-term care Medicaid coverage. Defendant's Memorandum in Opposition to Preliminary Injunction (Doc. 25), at 37, 38-39 (April 13, 2012).

3. Although the harm facing those whose applications have been delayed may be greater for individuals residing in the community than for those institutionalized, the delayed granting of Medicaid benefits to the latter group also constitutes irreparable harm, given the denial of access to community-based services such as outside doctors and transportation to medical appointments if Medicaid coverage is not available.